| UNITED STATES DISTRICT COURT | NOT FOR PUBLICATION |
|---|---|
| EASTERN DISTRICT OF NEW YORK | |

STANISLAV VANDENKO,

                Petitioner,

– against –

Superintendent WILLIAM LEE,

                Respondent.

**MEMORANDUM & ORDER**

10-CV-3208 (ERK)

KORMAN, *J*.:

## I. BACKGROUND

On October 30, 2003, Ludmila Anfisova was strangled to death in the apartment she shared with petitioner Stanislav Vandenko in Brooklyn, New York. After a five-day jury trial, petitioner was found guilty of murder in the second degree, criminal possession of a weapon in the fourth degree, aggravated criminal contempt, and criminal contempt in the fourth degree. Trial Tr. 710-14, ECF 24-1 at 863-67. Petitioner was also charged with, but found not guilty of, attempted assault in the second degree and criminal possession of a weapon in the fourth degree relating to an incident between him and Ms. Anfisova on August 20, 2003. *Id.* at 711-12, ECF 24-1 at 864-65. Petitioner was sentenced to concurrent prison terms aggregating to 22 years to life. Sentencing Proc. Tr. at 5-6, ECF 24-1 at 876-77.

The evidence presented at trial included testimony that petitioner and Ms. Anfisova frequently "scream[ed]," "yell[ed]," and "curs[ed]" at each other, Trial Tr. at 189, 546, ECF 24-1 at 342, 699; that there were no signs of forced entry into the apartment on the night of the murder, *id.* at 62, 210, ECF 24-1 at 215, 363, and petitioner was the only person besides Ms. Anfisova and the landlord who had a key, *id.* at 130, 134-35, ECF 24-1 at 283, 287-88; that

petitioner's DNA was found underneath Ms. Anfisova's fingernails, *id.* at 312-337, ECF 24-1 at 465-90, and petitioner had fresh scratches on his cheek and nose, *id.* at 57, 91-92, 117, 257, ECF 24-1 at 210, 244-45, 270, 410; that police found evidence of a struggle in the kitchen, *id.* at 234, ECF 24-1 at 387; that after knocking on a neighbor's door to tell her that somebody had killed his "wife," petitioner stopped in the middle of the street to urinate, *id.* at 190-91, ECF 24-1 at 343-44; and that petitioner had previously stated to a police officer that "if he ever kills [Ms. Anfisova], he was going to blame the police department for it," *id.* at 380, ECF 24-1 at 533, and when police officers arrived at the scene, petitioner spontaneously stated that the police killed his "wife," *id.* at 56, ECF 24-1 at 209.

The District Attorney also introduced a post-arrest statement in which petitioner claimed that he and Ms. Anfisova were sitting in the kitchen when there was a knock on the door. *Id.* at 251, ECF 24-1 at 404. Ms. Anfisova rose to answer the door and petitioner tried to stop her, at which point she began to fight with him, scratching him in the face. *Id*. at 251-52, ECF 24-1 at 404-05. Petitioner "got up to follow her and when he got into the hallway, he found [Ms. Anfisova] on the floor." *Id.* at 252, ECF 24-1 at 405. When asked how far behind her he was, petitioner stated that it was "not too far." *Id.* Believing her to be unconscious, he went to a neighbor's house and asked the neighbor to call the police. *Id.*

### A. Procedural History

On direct appeal, petitioner claimed that the trial judge erred by denying his request for a charge on the lesser included offense of manslaughter in the first degree. Resp't's Ex. B, ECF 24-2 at 2. The Appellate Division affirmed the judgment of conviction, concluding that there is "no reasonable view of the evidence that would support a finding that [the defendant] intended to cause the victim serious physical injury, but did not intend to cause her death." *People v.*

2

*Vandenko*, 70 A.D.3d 733, 733 (N.Y. App. Div. 2d Dep't 2010) (citations omitted). Leave to appeal was denied by the Court of Appeals. *People v. Vandenko*, 14 N.Y.3d 845, 845 (2010).

On July 9, 2010, petitioner filed a petition for a writ of habeas corpus, which raised the denial of the lesser-included offense instruction. First Pet. Habeas Corpus, ECF 1 at 3-4. At the same time, he asked Judge Vitaliano, to whom the case was then assigned, to delay ruling on the petition until he had exhausted his state remedies. *Id.* at 4-6. Moreover, he asked Judge Vitaliano to conduct a new evidentiary hearing on what appears to be a free-standing claim of actual innocence. *Id.* at 6-7. On September 23, 2010, Judge Vitaliano granted a stay of the petition until December 31, 2010, to allow petitioner to amend the petition to incorporate additional theories of habeas relief, and to explain the status of any proceedings pending in state court or notify the court that he is withdrawing his petition to pursue all exhausted claims at a later date. Second Mem. & Order, ECF 7. Judge Vitaliano subsequently extended the stay to March 31, 2011. Third Mem. & Order, ECF 9.

In a motion dated December 1, 2010, petitioner moved to vacate the judgment of conviction pursuant to N.Y. C.P.L. §§ 440.10 and 440.20, raising a claim of ineffective assistance of counsel and a free-standing actual innocence claim. Resp't's Ex. H, ECF 24-2 at 73-81. The trial court summarily denied petitioner's joint motion on March 23, 2011. Resp't's Ex. K, ECF 24-2 at 127-34. On April 6, 2011, after petitioner provided documentation that he had filed a post-conviction motion in state court, Judge Vitaliano dismissed the habeas petition without prejudice. Fourth Order, ECF 11. On April 12, 2012, the trial court denied petitioner's application for leave to appeal to the Appellate Division. Resp't's Ex. P, ECF 24-2 at 163.

B. **Petitioner's Second Federal Habeas Corpus Petition**

Petitioner then filed the instant habeas petition. Second Pet. Habeas Corpus, ECF 21-1. Petitioner raises five claims: (1) that his post-arrest statement was taken in violation of his Miranda rights; (2) that he received ineffective assistance of counsel because his trial attorney was unsuccessful in having petitioner's post-arrest statement suppressed, and failed to investigate and present a claim of actual innocence; (3) that his statement was coerced because he was questioned for more than five hours; (4) that his statement was taken in violation of his right to counsel, because the police did not honor his request for counsel when arrested; and (5) that his right to counsel was violated by the failure to assign counsel to assist him with his joint §§ 440.10 and 440.20 motion.

In an addendum to his second petition, petitioner also asserts a free-standing actual innocence claim. Add. Second Pet. at ¶¶ 9-16, ECF 21-2 at 2-5. He does not renew the request for a new evidentiary hearing included in his first habeas petition. While petitioner offers "to take any lie detector test that this Court deems just and proper to prove his innocence," *id.* at ¶ 16, ECF 21-2 at 5, this does not constitute a basis for relief. At most, it goes to his free-standing claim of actual innocence, which I address below.

## II. DISCUSSION

### A. Claims Relating to Petitioner's Post-Arrest Statement

The majority of petitioner's claims relate to the introduction of his post-arrest statement. The District Attorney argues that these claims are procedurally barred. Mem. Opp'n Pet. Habeas Corpus at 3-8, ECF 24. Nevertheless, I need not address this issue because the admission of petitioner's post-arrest statement, if error, was harmless. Habeas petitioners "are not entitled to habeas relief based on trial error unless . . . it resulted in 'actual prejudice.'" *Samuels v. Mann*, 13 F.3d 522, 526 (2d Cir. 1993). I need not find that the improperly admitted evidence had "no

4

effect at all," only that "the effect was not 'substantial and injurious.'" *Id.* at 528 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). The most important factor in this analysis is the "overall strength of the prosecution's case." *Glenn v. Bartlett*, 98 F.3d 721, 729 (2d Cir. 1996) (citing *Latine v. Mann*, 25 F.3d 1162, 1167-68 (2d Cir. 1994)). The prosecution's remaining evidence need not be "overwhelming," only "weighty." *Id.* (citing *Samuels*, 13 F.3d at 527-28). A useful shorthand for these considerations comes down to whether there is a reasonable probability that the error would have affected the outcome. *Cf. Harrington v. Richter*, 131 S. Ct. 770, 787 (2011) ("With respect to prejudice, a challenger must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)).

A "court conducting a harmless-error inquiry must appreciate the indelible impact a full confession may have on the trier of fact." *Arizona v. Fulminante*, 499 U.S. 279, 313 (1991) (Kennedy, J., concurring in the judgment). Petitioner's post-arrest statement here fell short of such a confession. On the contrary, petitioner's post-arrest statement was introduced by the prosecutor, presumably, for the purpose of showing that petitioner gave a false exculpatory statement. While the inconsistencies between petitioner's post-arrest statement and petitioner's (also implausible) testimony on direct examination may have been a contributing factor in the jury's determination of guilt, *compare* Trial Tr. at 251-52, ECF 24-1 at 404-05, *with id.* at 553-61, ECF 24-1 at 706-14, the remaining evidence of petitioner's guilt—including testimony that petitioner's DNA was found beneath Ms. Anfisova's fingernails, *id.* at 312-337, ECF 24-1 at 465-90; that petitioner had fresh scratches on his face, *id.* at 57, 91-92, 117, 257, ECF 24-1 at 210, 244-45, 270, 410; that there was evidence of a struggle in the apartment, *id.* at 234, ECF 24-1 at 387; that the apartment bore no signs of forced entry, *id.* at 62, 210, ECF 24-1 at 215, 363;

5

and that petitioner earlier stated that, "if he ever kills [Ms. Anfisova], he was going to blame the police department for it," *id.* at 380, ECF 24-1 at 533—is "weighty," to say the least.

Because the admission of petitioner's post-arrest statement, if error, was harmless, none of the claims relating to the introduction of the statement warrants habeas relief.

### B. Claims Relating to Actual Innocence

The petition, while not a model of clarity, appears to raise two claims relating to petitioner's innocence: first, a free-standing claim of actual innocence; second, a claim that petitioner's trial counsel was ineffective for failing to discuss and investigate his actual innocence. Both claims are without merit.

First, "[t]he Supreme Court has not finally resolved the issue of whether there is a federal Constitutional right to be released upon proof of actual innocence." *Friedman v. Rehal*, 618 F.3d 142, 159 (2d Cir. 2010).

> As Chief Justice Roberts observed, 'Whether such a federal right exists is an open question. We have struggled with it over the years, in some cases assuming, *arguendo,* that it exists while also noting the difficult questions such a right would pose and the high standard any claimant would have to meet.'

*Id.* (quoting *District Attorney's Office v. Osborne,* 557 U.S. 52, 71 (2009)). This is sufficient to dispose of petitioner's free-standing actual innocence claim, because the rejection of that claim by the judge in the § 440 proceeding, *see* Resp't's Ex. K, ECF 24-2 at 133, cannot be reversed unless it is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

Second, while petitioner's joint §§ 440.10 and 440.20 motion and motion for leave to appeal to the Appellate Division both raise an ineffective assistance of counsel claim, the latter motion does not incorporate all theories of ineffective assistance of counsel that petitioner now seeks to raise. Specifically, petitioner did not argue in his leave to appeal to the Appellate

6

Division that he had been provided with ineffective assistance of counsel due to his attorney's failure to "discuss" and "investigate[]" his actual innocence. *Compare* Resp't's Ex. H, ECF 24-2 at 81, *with* Resp't's Ex. M, ECF 24-2 at 148-56.

Passing over the significance of this omission, petitioner's underlying claim is without merit. The record reflects that trial counsel represented petitioner capably at trial, even winning an acquittal on the charges of attempted assault and criminal possession of a weapon relating to a separate incident between petitioner and Ms. Anfisova on August 20, 2003. Trial Tr. 711-12, ECF 24-1 at 865-65. Despite the implausibility of petitioner's story, trial counsel dutifully presented an innocence defense, arguing that "people who don't belong" in petitioner's gated community may have been able to sneak in, and pointing out that petitioner "was waiting for help, not fleeing"—actions "[in]consistent with a man who just committed murder." *See, e.g.*, Trial. Tr. at 617-19, ECF 24-1 at 770-71. The record belies petitioner's assertion of ineffective assistance of counsel. Moreover, in light of the overwhelming evidence of guilt, it is difficult to imagine what more counsel could have done. Nor does the petition contain any suggestions. Under these circumstances, petitioner's claim would fail even without reference to the double deference required by AEDPA. *See Harrington*, 131 S. Ct. at 778 (citation omitted).

**C. Sixth Amendment Claim as to Petitioner's Right to Counsel in State Post-Conviction Proceedings**

Petitioner argues for the first time that the failure to assign counsel to represent him in his joint §§ 440.10 and 440.20 motion was a violation of his right to counsel under the Sixth Amendment. *See* Am. Second Pet. at ¶¶ 5-9, ECF 21-2 at 1-3. Passing over the petitioner's failure to exhaust this claim, it is without legal merit.

There is no right to counsel in a collateral motion brought under N.Y. C.P.L. § 440. *See, e.g.*, *People v. Lopez*, 836 N.Y.S.2d 488, at *10 (N.Y. Sup. Ct. 2006) (citing *Pennsylvania v.*

7

*Finley,* 481 U.S. 551 (1987)); *People ex rel. Anderson v. Warden, N.Y.C. Corr. Inst. for Men*, 325 N.Y.S.2d 829, 837 (N.Y. Sup. Ct. 1971); N.Y. Judiciary Law §§ 35(1)(a)-(b) (authorizing the appointment of counsel for the filing of appeals and where a hearing is ordered, not for C.P.L. § 440 motions). However, relying on *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), petitioner argues that he had a constitutional right to counsel in his state post-conviction proceeding. Add. Second Pet. at 1-2, ECF 21-2. Petitioner's reliance on *Martinez* is misplaced. The Supreme Court has never held that a defendant is entitled to counsel in a post-conviction proceeding. On the contrary, in *Martinez*, the Supreme Court expressly stated that it was not necessary to resolve the issue whether, under certain circumstances, a defendant would be entitled to the assistance of counsel in an initial-review collateral proceeding on a claim of ineffective assistance of counsel at trial. 132 S. Ct. at 1315. Instead, it merely held that where a state prohibits a petitioner from bringing a claim of ineffective assistance of trial counsel on direct appeal, and either fails to provide him with an attorney in a collateral proceeding, or appointed counsel is ineffective, it cannot rely on a procedural forfeiture of that claim in a habeas corpus proceeding. *See id.* at 1315-20; *see also Gunner v. Welch*, 749 F. 3d 511, 518-19 (6th Cir. 2014). Because I do not rely on a procedural forfeiture on the part of petitioner in rejecting his claims of ineffective assistance of counsel, *Martinez* provides no basis for relief.

### III. CONCLUSION

The petition is denied. I also deny a certificate of appealability.

**SO ORDERED.**

Brooklyn, New York
October 29, 2014

*Edward R. Korman*
Edward R. Korman
Senior United States District Judge

8